# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

_____

| | | |
|---|---|---|
| **Steven Roy Earley, Jr., #294247** | ) | **C/A No. 4:08-3961-GRA-TER** |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| **Warden, Perry Correctional** | **)** | |
| **Institution; and John Ozmint,** | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

_____

Petitioner, Steven Roy Earley, Jr. ("petitioner/Earley"), a *pro se* prisoner, seeks habeas relief pursuant to 28 U.S.C. §2254. This matter is before the Court on the respondent's motion for summary judgment (document # 26).[1]

The petitioner filed this petition for a writ of habeas corpus on December 10, 2008. On June 26, 2009, the respondent filed a motion for summary judgment, along with supporting memorandum and exhibits. The undersigned issued an order filed June 29, 2009, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising the petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. On July 20, 2009, the petitioner filed a response to the respondent's motion for summary judgment.

---

[1]This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

# I. PROCEDURAL HISTORY

The procedural history as set out by the respondent has not been seriously disputed by the petitioner. Therefore, the undisputed procedural history as stated by the respondent is set forth herein.

Petitioner is currently incarcerated in Perry Correctional Institution pursuant to an order of commitment from Lexington County. Petitioner was indicted in July 2002 for the murder of William T. Streett. (PCR App. pp. 194-195). Bradley M. Kirkland, Asst. Public Defender, represented petitioner on the charge. On June 24, 2003, pursuant to negotiations, petitioner pleaded guilty as charged, in exchange for a promise of a thirty (30) year sentence, and dismissal of an armed robbery charge, a criminal conspiracy charge, a petit larceny charge, and a possession of a stolen weapon charge. (PCR App. pp. 8-9). The Honorable Marc H. Westbrook heard and accepted the plea. Judge Westbrook also accepted the negotiated sentence and sentenced petitioner to imprisonment for thirty (30) years. (PCR App. p. 9). Petitioner did not appeal his conviction or sentence.

On March 26, 2004, petitioner filed an application for post-conviction relief ("PCR"), in which he raised the following claims:

(a) Ineffective Assistance of Council [sic] in violation of my Sixth and Fourteenth Amendment Rights guaranteed by the U.S. Constitution.

10-A-1 My trial attorney did not make a reasonable investigation of the facts concerning my case and informed me that I had to enter a guilty plea and that there was no choice in the matter. My trial attorney failed to let me review my records (case file) and never informed me or discussed with me what evidence the state claimed to have against me. My trial attorney never allowed me to review any discovery material that he received from the Solicitor, If he received any at all. My trial attorney never consulted with me regarding any decisions. Other than to harass and coerce me to enter a guilty plea. My trial attorney knew that I did not want him to be my attorney considering the fact that he was released from a prior case due to Ineffective Assistance of counsel and my distrust for him.

10-A-2 My trial attorney coerced me into entering a guilty plea and also threatened me repeatedly that if I insisted on going to trial, he would permit the trial judge to give me two (2) life sentences. My trial attorney also informed me that I did not have a defense. The reason that I did not have a defense is because my trial attorney failed to make a reasonable investigation for my case.

10-A-3 If my trial attorney would have made a reasonable investigation, he would have found that there was insufficient evidence for any reasonable jury to find me guilty beyond a reasonable doubt. If not for my trial attorneys' failure to advocate for me or to have himself removed or replaced by another attorney, I would not have entered a guilty plea and would have insisted on going through with a trial and appeal; If necessary.

10-A-4 My trial attorney labored under an actual conflict of interest. I, (Steven Ray Earley Jr.) had him removed as counsel when represented me in a previous action and he knew that those same reasons still exited. (Ineffective assistance of counsel). He should not have represented me in this case. I knew that he would not represent my best interests and he only wanted to do whatever was necessary to have me plead guilty and end the proceedings. I had submitted a letter of complaint to the judge Westbrook on April 15, 2003 which was at least two (2) months prior to trial, and asked that this attorney be removed as my attorney. Only to receive no answer to that letter. Counsel was fully aware of my efforts to have him removed and should have moved the court to have himself removed as my attorney. Since he did not do so, I was denied my Sixth and Fourteenth amendment to an attorney who would advocate for me, consult with me, represent me at trial and assist me in putting up a defense to any charges that the State my have had against me.

(b) The guilty plea violated my due process rights as it was not entered knowingly voluntarily or intelligently and was entered when I did not have an understanding of the consequences of entering the plea.

10-B-1 The guilty plea was entered because of the Ineffective assistance of counsel wherein counsel refused to investigate the facts concerning my case and where counsel obtained the plea for the state by threatening me with a double life sentence if I did not cooperate.

10-B-2 The plea was involuntary wherein it was entered because of the threat that I would be found guilty at trial and sentenced to two (2) life sentences at the conclusion of trial. A reasonable investigation by the trial counsel would have verified that there was insufficient evidence for a jury to return a guilty verdict of murder.

10-B-3 The plea was not entered knowingly and intelligently because it was entered wherein trial counsel failed to explain to me the extent of the federal Constitutional

rights I was waiving by entering the plea. I did not know that my right to confront witnesses against me included the right to refute their testimony by cross-examination and by my testimony. I did not know that it would have been solely my decision to testify at trial and counsel did not explain this to me. Had I known that I could testify and that counsel could not have stopped me from testifying, I would have insisted on going to trial so as to testify in my defense and refute the evidence the State presented.

10-B-4 The guilty plea also was not entered knowingly voluntarily and intelligently where it was entered because I felt I had no other choice. I had an attorney who did not wish to represent my best interests as demonstrated by his previous representation in another matter. and counsel know that I did not trust him, but I had no choice. Counsel should have moved the court to have himself removed as my attorney and to assure that I was appointed an attorney who would consult with me, make a proper and adequate investigation and then advise me without threatening me with a (Double Life Sentence). Here Counsel told me that I would be found guilty and sentenced to two (2) life sentences. Not that I might be or that it was most likely that I would be. Counsels' conduct towards me was such that I was led to believe that he had control over my life because he could decide if I was to get two (2) life sentences or not, that he was angry at me because I had him removed as my attorney once before and that if I did not go along with him and just entered a guilty plea, He would see to it that I received (2) life sentences.

10-B-5 I answered the judges' questions at the colloquy the way my attorney told me to answer them, so as to end the proceedings. I was scared and had no advocate, so I did not know what to do. If I would have told the judge about what counsel was doing to coerced the plea, I believed that the judge would only disregard what I stated, The attorney would have even been angrier and I would have got two (2) life sentences.

(PCR App. pp. 13-20).

On October 7, 2005, petitioner filed an amended application, to include the following allegations:

I.   Ineffective Assistance of Counsel

     [conflict of interest; failed to investigate defenses; failed to inform of self-defense or lesser included offense; failed to request mental/competency evaluation; failed to advise and request appeal; failed to inform of possibility of guilt of lesser offense at trial; counsel failed to disclose Brady evidence to applicant; failed to interview witnesses; failed to move to suppress robbery indictment]

II.  Guilty Plea Unintelligently and Involuntarily Entered;

[due to ineffective assistance]

III.     Denial of Due Process;

[due to ineffective assistance and involuntary plea]

IV.     Failure to File Appeal.

(PCR App. p. 25).

John J. McCauley, Esq., represented petitioner in the action. The State made its return on July 9, 2004. (PCR App. pp. 38-41). An evidentiary hearing was held January 24, 2006, before the Honorable Clyde N. Davis. On July 6, 2006, Judge Davis issued an order denying relief. (PCR App. pp. 173-182). Petitioner appealed the denial of relief.

Robert M. Pachak, Appellate Defender of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented petitioner on appeal. On March 6, 2007, appellate counsel filed a Petition for Writ of Certiorari in the Supreme Court of South Carolina, raising the following issue:

Whether there was any evidence to support the PCR judge's findings that petitioner was not entitled to a belated appeal?

(Cert. Petition, p. 2).

The State made its return to the petition on June 18, 2007. The Supreme Court of South Carolina granted the petition by order dated January 9, 2008, dispensed with further briefing on the certiorari issue, and ordered "the parties to brief the following direct appeal issue pursuant to White v. State, 263 S.C. 110, 208 S.E.2d 35 (1974), and Rule 227(i)(2), SCACR: Was petitioner's plea knowingly and intelligently entered?" On March 5, 2008, appellate counsel filed a Brief of petitioner on the issue. On April 4, 2008, the State filed its brief in response. On October 27, 2008, the

Supreme Court of South Carolina, filed a Memorandum Opinion affirming the conviction. <u>Earley v. State,</u> Memorandum Opinion No. 2008-MO-041 (S.C.Sup.Ct. filed October 27, 2008). The state court issued the remittitur on November 13, 2008.

## II. PETITIONER'S GROUND FOR RELIEF

On December 10, 2008, the petitioner filed this habeas petitioner raising the following grounds, quoted verbatim:

Ground One:    Ineffective assistance of counsel in violation of my Sixth and Fourteenth amendment Rights;

Supporting facts:    Conflict of interest. Prejudiced against when counsel labored under conflict of interest. Failed to investigate all defenses. Counsel failed to subject the Prosecutions' case to a meaningful adversarial testing. Counsel Failed to inform client of any Lesser offenses to the crime. counsel failed to request a Mental/Competency Evaluation. Counsel failed to prepare clients direct appeal from judgment of conviction.

Ground Two:    Involuntarily and unintelligently entered Guilty Plea.

Supporting facts:    Counsel Failed to explain all consequences, defenses and the nature of the offense before advising client to Plead guilty. The guilty plea was entered Involuntarily and unintelligently because I went off of the advise of my Lawyer. If my Lawyer would have done his job to the fullest I would have gone on to trial or the State would have offered a lesser sentence. The things my lawyer did not do actually hurt me a lot.

Ground Three:    Denial of Due Process

Supporting facts:    My counsel failed to request a Mental/Competency evaluation prior to trial to determine my ability to assist in my own defense.

Ground Four:    Failure to file an appeal

Supporting facts:    My Lawyer told me that I could appeal the guilty verdict once

6

I pled guilty. He said he would have to do it. After the guilty
plea was over I told him to appeal the verdict but he never
did. That was added to the many other errors he made in my
case.

(Habeas Petition, pp. 6-11).

### III. SUMMARY JUDGMENT

As stated above, on June 26, 2009, the respondent filed a return and memorandum of law in support of their motion for summary judgment and petitioner filed a response in opposition.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both

parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## IV. STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal

law, " '[a] federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" <u>Humphries v. Ozmint</u>, 397 F.3d 206, 216 (4th Cir. 2005) (*quoting* <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000)). Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." <u>McHone v. Polk</u>, 392 F.3d 691, 719 (4th Cir. 2004).

## V.  DISCUSSION AS TO PROCEDURAL BAR

### A.  Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C.§ 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2)     An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)     A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required

to state all his grounds in that appeal, See SCAR 207 and Blakeley v. Rabon, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). However, if petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. Rose 455 U.S. at 515.

Respondent asserts that he "[s]ees no exhaustion issue." (Memorandum p. 5).

## 2.Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of

a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, supra, quoting Wainwright v. Syke s, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with

state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

### 3.  Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  A federal court is barred from considering the  filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert.denied, 118 S.Ct. 102 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4.  Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000

(1988).

      Absent a showing of "cause," the court is not required to consider "actual prejudice." <u>Turner v. Jabe</u>, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. <u>Murray v. Carrier</u>, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. <u>United States v. Frady</u>, 456 U.S. 152 (1982).

      In the case of <u>Kornahrens v. Evatt,</u> 66 F.3d 1350 (4th Cir. 1995), <u>cert. denied</u> 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. <u>See</u> <u>Karsten v. Kaiser Foundation Health Plan</u>, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VI. ANALYSIS

      The respondent contends that the issues raised in this habeas petition, with the exception of the issue concerning the failure to file an appeal, are procedurally barred from review and are without merit. Specifically, respondent argues that petitioner failed to present any of the other three grounds in his PCR appeal, and, instead, only argued that he was improperly denied a direct appeal. Respondent further asserts that the record shows no discernable cause to excuse the default, nor had petitioner argued any, and a claim of actual innocence would not be credible on this record.

In Ground One, petitioner raised the issue of conflict of interest in his PCR application but did not appeal this issue. With regard to Ground Four, petitioner did not raise the issue that counsel failed to contest his competency in his PCR application. Therefore, Grounds One and Four are procedurally defaulted and respondent's motion for summary judgment should be granted on these Grounds.

The court agrees with respondent that the only issue raised in the Petition for Writ of Certiorari in the Supreme Court of South Carolina was the issue of "Whether there was any evidence to support the PCR judge's findings that petitioner was not entitled to a belated appeal?" The South Carolina Supreme Court granted the Petition for Writ of Certiorari and granted petitioner a belated appeal pursuant to White v State. Petitioner filed a brief for his belated appeal arguing that his guilty plea was not knowingly and voluntarily entered pursuant to Boykin v. Alabama contending that (1) he was not advised that if he were tried by a jury the verdict would have to be unanimous, and (2) the plea in this case was supported by only two pages of facts. On October 27, 2008, the Supreme Court of South Carolina entered an opinion affirming the conviction concluding the following:

> We affirm pursuant to Rule 220(b)(1), SCACR, and the following authorities: State v. McKinney, 278 S.C. 107, 292 S.E.2d 598 (1982) (holding the unknowing and involuntary nature of a guilty plea cannot be attacked on direct appeal absent a timely objection on this basis at the plea proceeding); McCray v. State, 271 S.C. 185, 188, 246 S.E.2d 230, 231 (1978) (stating, in the context of a belated appeal under White, a "defendant can. . . raise and argue on the 'belated appeal' [only] those issues [that] could have been raised and argued on a timely direct appeal"; State v. Lambert, 266 S.C. 574, 579, 225 S.E.2d 340, 342 (1976) (holding a plea judge need not "direct the defendant's attention to each and every constitutional right and obtain a separate waiver of each" and that "an enumeration of specific rights waived is not required where the record otherwise reveals affirmative awareness of the consequences of a guilty plea").

As previously discussed, the South Carolina Supreme Court allowed a belated appeal and petitioner raised the issue that his plea was not knowingly and voluntarily entered as required by

Boykin v. Alabama, 395 U.S. 238 (1969). Specifically, petitioner argued that (1) he was not advised that if he were tried by a jury the verdict would have to be unanimous, and (2) the plea in this case was supported by only two pages of facts. The South Carolina Supreme Court affirmed the conviction concluding that petitioner could not raise the issue that his plea was not knowing and involuntary because there was not a timely objection on this basis at the plea proceeding.

Respondent is correct. The involuntariness of his plea was not raised with or ruled upon by the state's highest court as an ineffective assistance of counsel claim. Therefore, it is procedurally barred. The voluntariness of his plea was raised on direct appeal and the South Carolina Court, *citing* McKinney, supra, dismissed the appeal because the issue was not raised in front of the trial court. Therefore, petitioner is procedurally barred from raising it in habeas review. See Chronister v. South Carolina, 2009 WL 144507 (D.S.C. May 20, 2009).

The petitioner has not shown sufficient cause and prejudice to excuse the default. In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, it is procedurally barred from consideration by this Court and should be dismissed. Id.; *see* 28 U.S.C. 2254; Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir.1990), *cert. denied,* 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."]; Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir.), *cert. denied*, 519 U.S. 1016 (1996) [In order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result

of the proceeding would have been different.]; <u>Wainwright v. Sykes</u>, <u>supra</u>; <u>Murray v. Carrier</u>, 477

U.S. 478 (1986); <u>Rodriguez</u>, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in

extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one

who is actually innocent"](citing *Murray v. Carrier,* 477 U.S. at 496); <u>Sawyer v. Whitley</u>, 505 U.S.

333, 348 (1992); <u>Bolender v. Singletary</u>, 898 F.Supp. 876, 881 (S.D.Fla.1995). Therefore, it is

recommended that the respondent's motion for summary judgment be granted with respect to

Grounds One, Two, and Three being procedurally defaulted.

With respect to Ground Two in which petitioner asserts his plea was not intelligently and

knowingly entered, the issue would still fail even if not procedurally defaulted pursuant to <u>Boykin</u>

as raised in the belated appeal.

As previously stated, petitioner argues in Ground Two that he involuntarily and

unintelligently entered a guilty plea. In his habeas allegations, petitioner asserts that his plea was

involuntarily and unintelligently enter because "counsel failed to explain all consequences, defenses

and the nature of the offense before advising client to Plead guilty. The guilty plea was entered

involuntarily and unintelligently because I went off of the advise [sic] of my lawyer. If my lawyer

would have done his job to the fullest I would have gone on to trial or the State would have offered

a lesser sentence. The things my lawyer did not do actually hurt me a lot." Although the reasons

petitioner raised for the plea not being voluntarily and intelligently waived differ, the fact is

petitioner raised the issue that his plea was not voluntarily and intelligently entered both in the state

court and in this petition. As such, the undersigned will review the issue on the merits.

A plea of guilty is considered by the court to be a solemn judicial admission that the charges

against the defendant are true. The defendant may not later argue that his plea was invalid except

in extremely limited circumstances, <u>Blackledge v. Allison</u>, 431 U.S. 63 (1977). The statements made by a defendant at the time he pleads guilty are taken as conclusive unless he can clearly demonstrate why those statements were not true, <u>Crawford v. United States</u>, 519 F.2d 347, 350 (4th Cir. 1975).

A review of <u>Hill</u>, <u>supra,</u> by the undersigned reveals the court held that, quoted verbatim:

> Although our decision in <u>Strickland v. Washington</u> dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, and was premised in part on the similarity between such a proceeding and the usual criminal trial, the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process. Certainly our justifications for imposing the "prejudice" requirement in <u>Strickland v. Washington</u> are also relevant in the context of guilty pleas.

<u>Hill</u>, 474 U.S. at 56.

Petitioner's allegation that his plea failed to satisfy the requirements of <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969) is without merit. In accepting a guilty plea, the court must determine whether it represents an informed, intelligent decision by the defendant, <u>Boykin v. Alabama</u>, <u>Id.</u>, after he understands all of the constitutional protections to which he is entitled, as well as the charges against him, <u>Henderson v. Morgan</u>, 426 U.S. 637, 645, n.13 (1976). At the plea hearing, the defendant must also be advised of the immediate results of his plea, including the maximum sentence he may receive and any mandatory minimum sentence, <u>Manley v. United States</u>, 588 F.2d 79 (4th Cir. 1978).

The undersigned reviewed the transcript and concludes that the trial judge complied with <u>Boykin,</u> <u>supra</u>. It is clear from the trial transcript that the trial judge carefully questioned the petitioner as to his understanding of the plea and to his right to a jury trial. As well, the trial judge communicated with the trial counsel on these issues.

A review of the plea transcript reveals the following colloquy between the state judge and

petitioner:

Judge:       Mr. Earley, I understand you want to plead guilty to a charge of murder; is that correct?

Early:       Yes.

Judge:       Do you understand that since the State has not asked for the death penalty that you could get as much as life in prison, but you have to get at least 30 years?

Early:       Yes.

The Court:   And you understand that that 30 years is day for day. In other words, there is no probation, no early release. It's 30 years.

Early:       Yes.

Judge:       It that's what it is. Do you understand that?

Early:       Yes.

Judge:       It could be 40, 50, whatever, do you understand?

Early:       Yes.

Judge:       Now do you understand that you don't have to plead guilty? You have a right to plead not guilty and have a jury trial. If you had a jury trial, there would be a number of rights available to you, including the right of certain strikes in picking the jury. A number of motions could be made on your behalf. Your lawyer would be able to make an opening and closing statement during the trial. The state would have to put up witnesses. They have the burden of proof. They must prove you guilty beyond a reasonable doubt, and to do that they would have to put up witnesses. Those witnesses would have to testify in open court, and your lawyer could question the witnesses. Do you understand all that?

Early:       Yes.

Judge:       Do you understand that you also could testify yourself, but you wouldn't have to? It's up to you. You could call other witnesses if you wanted to, but again you wouldn't have to. That would be up to you. Again, your lawyer could have a closing statement. There would be a number of motions available to you. And if you were convicted by the jury, you would have a

right to file an appeal. Do you understand all that?

Early:     Yes, sir.

Judge:     Now, do you have any other questions about your rights to a jury trial?

Early:     No.

Judge:     Have you been over all that with your lawyer.

Early:     Yes.

Judge:     And you understand, however, that if you plead guilty that you are going to give up all of your rights under a jury trial. That includes that you won't be able to put up a defense. You wouldn't be able to testify. You would not be able to make all these motions. Any complaints you might have against the state or anyone else, all of those you would give up. Do you understand that?

Early:     Yes.

Judge:     Understanding that do you still want to plead guilty?

Early:     Yes, sir.

Judge:     Are you pleading guilty of your own free will, Mr. Early?

Early:     Yes, sir.

Judge:     Any other discussion between your lawyer and the solicitor, has anybody promised you anything or threatened you in any way to get you to plead guilty?

Early:     No.

Judge:     Do you admit you are guilty of this charge?

Early:     Yes, sir

Judge:     And at this time are you under the influence of any drugs or alcohol or medication of any kind?

Early:     No, sir.

Judge:     Is there any medication you should be taking that you are not taking?

| | |
|---|---|
| Early: | No, sir. |
| Judge: | During the past year, have you had any kind of treatment, emotional treatment or counseling or therapy of any sort? |
| Early: | No. |
| Judge: | Are you satisfied with your lawyer? |
| Early: | Yes, sir. |
| Judge: | Do you feel like he has done everything you wanted him to? |
| Dearly: | Yes. |
| Judge: | Have you had his advice in this matter? |
| Early: | Very much so. |
| Judge: | Is there anybody else you need to talk to, family member, counselor or anyone at all? |
| Early: | No. |
| Judge: | I think I went over with you earlier, you understand this is classified as a most serious offense under South Carolina law. Even if you were to get a 30-year sentence, if after you got out you were to commit another most serious offense, you would face life without parole under that circumstance, do you understand that? |
| Early: | Yes. |
| Judge: | Understanding all of this - - and do you understand also that if you are not happy with what turns out today, you have ten days to appeal from that? |
| Early: | Yes, sir. |
| Judge: | Do you have any questions about this at all? |
| Early: | No, sir. |
| Judge: | Do you feel like you understand what is going on? |

| | |
|---|---|
| Early: | Yes, sir. |
| Judge: | Understanding all this do you still want to plead guilty? |
| Early: | Yes. |

(Plea Tr. 2-6).

The solicitor announced the following facts at the plea hearing:

> Mr. Early was released from the Department of Corrections on October 22, 2001, and ended up residing on . . . in West Columbia with Michael Buckley.

> Shortly thereafter he began going down to the river under the Clapman Boulevard bridge in West Columbia and fishing.

> On November 3, 2001, he stole a handgun, a 44-caliber handgun, from Lee Hoover in West Columbia and then went back down to the river and began target practicing with that gun down there.

> He was seen down at the river with a handgun by witnesses. Later on he was heard down at the river saying that he was going to shoot the victim, who was William Streett, prior to the murder.

> The night of the murder, Your Honor, was November 6, 2001. At that time Mr. Earley showed up down to a camp of homeless individuals down below the bridge. Larry Moore was down there and so was the victim, William Streett.

> Mr. Street was asleep. Mr. Early came down and woke Mr. Streett up, and they all sat around the campfire drinking and talking.

> At some point, your honor, Mr. Earley pulled out the 44-caliber gun and fired one shot into the head of Mr. Streett killing him. He died from a laceration to the brain.

> After he shot him, Your honor, Mr. Moore asked him why he did it. He told Mr. Moore that it was Rabbit, which is Mr. Streett's nickname, it was his time to die.

> They then–Mr. Streett [sic] then took the body out of the chair that it was sitting in, he and Mr. Moore went through the pockets. Mr. Earley removed a wallet. There was some change that was taken.

> Mr. Moore went up to the Bi-Lo from there, got a beer came back down. They attempted to dig a shallow grave there on the river bank, were unable to do that. They then took the body to the water's edge and Mr. Moore took the body out into

the river.

Mr. Earley then went back to the residence on . . .where he was at. Mr. Buckley told the police that Mr. Earley came home with a handgun in his possession and also covered with blood.

On November 16, 2001, the West Columbia Police Department went to that residence at . . . looking for Mr. Earley. They were granted consent to search the place.

When they went in, they found Mr. Earley in the bathtub with a shower curtain pulled. Subsequent to a search warrant, your honor, they found the wallet of William Streett in the tank of the toilet.

The solicitor announced that this was a negotiated sentence for 30 years on the murder charge and that the State was "dismissing an armed robbery charge, a criminal conspiracy charge, a petit larceny charge, and the possession of a stolen weapon."

(Plea Tr. 8).

As set out above, the trial court questioned the petitioner thoroughly about his guilty plea and the possible minimum and maximum sentences. Additionally, the trial court carefully questioned the petitioner as to his understanding of his guilty plea and his right to a jury trial.  It is apparent from the trial transcript that the petitioner clearly communicated with the trial judge and clearly understood the charge to which he was pleading guilty.

In conclusion, the undersigned finds that there was no constitutional violation  and that the plea was voluntarily made.[2] No genuine issue of material fact has been shown.  Therefore, based on

---

[2] At the PCR hearing, the PCR judge stated in his order of dismissal that he was interpreting all of his PCR allegations as claims of ineffective assistance of counsel and that his allegation that his plea was involuntary must be characterized as a claim of ineffective assistance of counsel. The PCR judge concluded that petitioner pleaded guilty to murder but "now claims it was an accident. His attorney testified that Applicant claimed the victim wanted Applicant to kill him, sort of an assisted suicide. He never told his attorney it was an accident. Applicant complains that the trial judge did not explain the elements of the crime to him, particularly the element of malice. Plea council, however, testified he explained the elements to Applicant.

the above, the undersigned recommends that the respondent's motion for summary judgment be granted on this ground.

In Ground Four of the habeas petition, petitioner asserts that his attorney did not file a direct appeal after his guilty plea. This issue is moot in that the South Carolina Supreme Court allowed petitioner to file a belated appeal. Therefore, it is recommended that this issue be dismissed as moot.

## VI. CONCLUSION

Based on the reasons set out above, it is RECOMMENDED that respondent's motion for summary judgment (document #26 ) be GRANTED.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

November 5, 2009
Florence, South Carolina
**The parties' attention is directed to the important notice on the next page.**

---

Furthermore, there was ample evidence of malice as Applicant used a deadly weapon to shoot the victim in the head. Plea counsel's investigator interviewed sixteen witnesses and counsel testified that all of them had credibility problems. Additionally, there was an eyewitness who helped Applicant attempt to hide the body after the shooting." (PCR order, Tr. 180-181).
However, petitioner only appealed the issue of whether or not he was entitled to a belated appeal in is Petition for Writ of Certiorari. Additionally, in the belated appeal that the Supreme Court granted, petitioner only raised the issue of whether his plea was knowingly and intelligently entered pursuant to <u>Boykin v. Alabama</u>. Therefore, any issue related to ineffective assistance of counsel is procedurally barred.